17 So.2d 657
### MOSELEY v. MONTEABARO et al.
#### 2 Div. 200.

Supreme Court of Alabama.

April 20, 1944.

Pettus & Fuller, of Selma, for appellant.

Wilkinson & Wilkinson and Pitts & Pitts, all of Selma, for appellees.

476

The equity sought to be maintained is the removal of an alleged cloud from complainants' title to land described, but not alleging that complainants are in possession of it. The title to the land derived from a will of Ann H. Moseley, who died in March 1871, and whose will was soon afterwards admitted to probate. The will made certain provisions for her husband, E. B. Moseley, and her daughter Natalie Moseley (who changed her name to Annie M. Carson, by which name we will refer to her), and other children who died in infancy, and whose interests vested in Annie M. Carson under the will. The will is set out as an exhibit to the bill and contains ambiguous provisions. The bill contains the following averments:

"5. That thereafter and in a certain cause in the chancery court of Dallas County, Alabama, wherein E. B. Moseley was complainant and Annie M. Carson and others were defendants, said court did on the 24th day of April, 1912, render a decree construing said will and ascertaining the right, title or interest of E. B. Moseley, Annie M. Carson, Mattie H. Tubb, and W. J. Hunter in and to the property above described. The pertinent provisions of said decree are as follows:

" 'That E. B. Moseley has the right to the use and enjoyment of the land described in the pleadings, during his life. That Annie M. Carson, subject to the life estate has a fee absolute, as to the rights of creditors and purchasers but subject to the estate limited there; that is,—it is to go to the children of Mrs. Amelia Hunter, who are Mattie H. Tubb and W. J. Hunter, in the event the power of sale given to Annie M. Carson by the will is not executed, or the land sold for the satisfaction of the debts of Annie M. Carson during the continuance of her estate.'

"That annexed hereto, marked 'Exhibit B' and made a part hereof is a copy of said decree.

"6. Your complainants further aver that subsequent to said decree both Mattie H. Tubb and W. J. Hunter died intestate, and that your complainants are the only children of the said Mattie H. Tubb and are nieces of the said W. J. Hunter, who died without issue surviving him, and that your complainants as such children and nieces are the next of kin and only heirs at law of the said Mattie H. Tubb and the said W. J. Hunter and as such inherited from their said mother and uncle their re-

FOSTER, Justice.

This is an appeal from a decree overruling demurrers to a bill of complaint.

spective interests in the lands herein above described.

"That E. B. Moseley, the husband of Ann H. Moseley, died a number of years ago.

"7. Your complainants allege that Annie M. Carson, the same person as Natalie Moseley, died, without issue of her body surviving her, on or about the 4th day of October, 1943, and your complainants further allege that prior to the death of the said Annie M. Carson, she did convey to Eva Mae Moseley, the respondent herein, by her deed under date of May 18, 1936, the real estate herein above described for a purported consideration of $500.00 cash and other good and valuable considerations."

It then attacks that deed as a fraudulent exercise of the power which the decree of April 24, 1912, supra, declared that she had under the will. The facts on which the fraud is claimed are set forth fully in paragraph 7. They are briefly that Annie M. Carson, by an arrangement with Eva Mae Moseley, her half-sister, and grantee under the power, was to have all rights of and ownership as long as she lived; that the deed was not to take effect until the death of Annie M. Carson, and was without consideration, and in effect was testamentary disposition and an attempt to cut off complainants' interest indirectly; that the land was worth in excess of ten thousand dollars. Eva Mae Moseley is the only respondent.

The argument of appellant in brief has simplified the questions which are sought to be sustained and reduced them to two. First, that appellant is entitled to a trial by jury which is demanded in a written provision attached to the demurrer, on the theory that appellant is in possession of the land, and any right of recovery involves the legal title and that she has a constitutional right to a jury trial. The ground of demurrer which presents that question is embraced in the contention that there is an adequate remedy at law, since complainants are not in possession. And the second contention is like unto it, that complainants being out of possession cannot maintain a suit in equity, which has no other equitable right but that to remove a cloud from title available at law.

 It is of course fully settled that unless complainants not in possession have an equitable claim for which a remedy at law is not complete, they cannot maintain a suit to remove a cloud from title, not now considering possible exceptions. And when complainants have an equitable remedy open to them, it may be enforced without a trial by jury except when such trial is provided for by statute. Yauger v. Taylor, 218 Ala. 235, 118 So. 271; Tillery v. Commercial Nat. Bank of Anniston, 241 Ala. 653, 4 So.2d 125; Ex parte Baird, 240 Ala. 585, 200 So. 601.

So that appellant's whole contention is settled by the inquiry of whether complainants have an adequate remedy at law.

Complainants rely for their equitable standing upon the case of Davidson v. Brown, 215 Ala. 205, 110 So. 384, followed in Dunn v. Ponceler, 235 Ala. 269, 178 So. 40; Tyler v. Copham, Ala.Sup., 16 So.2d 316.[1] They call attention to a refinement of reasoning in that connection which is said to be determinative of equity jurisdiction. In substance it is this: When it is alleged that fraud is used in respect to the consideration or inducement to the execution of an instrument which the grantor knows is a deed, and has the capacity to make a deed, the legal title passes to the grantee and is not divested by a showing of such fraud, and therefore a court of law which deals only with the legal title will not treat it as though it never passed, for it did pass, but a court of equity is required to divest the title out of the grantee by reason of the fraud. But if the grantor was induced to go through the form of executing a deed on a misrepresentation of its contents, when the grantor did not know it was a deed, or when he did not have the mental capacity to make a conveyance, the title never passed out of him, and on such a showing a court of law will treat the title as having remained in the grantor, and it does not need the powers of equity to revest the title.

Complainants insist that the situation shown in the instant case is governed by that principle as first above stated. But the power sought to be exercised by Annie M. Carson was not an attempt to convey her title which somebody procured by fraudulent inducement. But she herself is charged with making a fraudulent execution of a power of sale conferred on her by the will. It resembles in this respect a fraudulent sale made by a debtor in respect to the rights of his creditors. That situation was analyzed in some of our early

---

[1] Ante, p. 151.

478

leading cases, and has been consistently followed. Smith's Ex'r v. Cockrell, 66 Ala. 64. See, also, Pettus v. Glover, 68 Ala. 417; Altman v. Barrett, 234 Ala. 234(3), 174 So. 293, citing many cases. From the case of Smith's Ex'r v. Cockrell, supra, we quote as follows:

(The law court) "acts only on the legal titles presented and pronounces them valid or invalid. The other (equity court) creates, removes, or destroys legal titles, when such remedial powers are necessary for the maintenance and protection of ascertained equities. Now, it is not the question of fraud, which gives the Chancery Court its jurisdiction in such cases. It is the character of relief which the exigencies of the case call for. If, when the alleged fraud is proved and found, all the plaintiff can claim follows as a legal consequence, then he has a complete and adequate remedy at law, and there is no use for the powers of the Chancery Court."

And, again on page 82 of 66 Ala., it is said:

"But fraud is cognizable at law as well as in equity, and vitiates all transactions into which it enters, no matter how solemn the form of their execution.—2 Brick.Dig. 14 § 10; Code of 1876, § 2124. So that, if property of a debtor has been conveyed by him with intent to delay, hinder and defraud his creditors, it remains, as to his debts, as if no attempt had ever been made to convey it. As to creditors, and those claiming under them and in their right. the legal title remains in the judgment debtor until the sale and conveyance by the sheriff, and then it passes to the purchaser. This, because the fraudulent conveyance is treated as a nullity—as if it had never been. *The purchaser's title is legal, or it is nothing.* If the debtor's conveyance, in defiance of which he purchased, is fraudulent, then his title acquired at the sheriff's sale *is legal, without a semblance of an equitable title entering into it. So,* if the debtor's conveyance is not fraudulent, *the purchaser has no title, legal or equitable.*"

We have here a situation similar in respect to this principle to what the court was dealing with in that case. The effort here is not by a grantor to revest title which she voluntarily conveyed, being fraudulently induced to do so. She did not pass her own title by the deed in so far as complainants are interested. If in attempt-

ing to execute a power of sale conferred on her she did so in fraud of the rights of these complainants as remaindermen, it simply was no exercise of the power at all and did not affect the rights of the remaindermen. It is like a fraudulent conveyance by a debtor. It passes title so far as he is concerned, but passes none so far as the defrauded creditor is concerned. Rowe v. Bonneau-Jeter Hdw. Co., Ala.Sup., 16 So. 2d 689.[1] Fraud vitiates the transaction in so far as the remaindermen are concerned. Braley v. Spragins, 221 Ala. 150(16), 128 So. 149; Yockers v. Hackmeyer, 203 Ala. 621, 84 So. 709; 27 A.L.R. 1388; 32 Am. Jur. 733, section 249, page 734, section 250.

Upon such showing being made in an action at law against appellant by complainants whose rights had matured when the suit was begun, the deed of Annie M. Carson to her sister in an attempt to execute the power would not stand in their way of recovery of the land.

The demurrer should have been sustained, and decree will be here entered reversing the decree of the trial court and rendering one here sustaining the demurrer.

Reversed, rendered and remanded.

GARDNER, C. J., and BOULDIN, LIVINGSTON, and STAKELY, JJ., concur.

